IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

KATHERYN MEYERS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0040

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . 2

III.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.    Meyers' Education and Employment Background . . . . . . . . . . . . . 3
    B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . 4
        1.    Meyers' Testimony . . . . . . . . . . . . . . . . . . . . . . . . 4
        2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . 5
    C.    Meyers' Medical History . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . 8
    A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . 8
    B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . 10
        1.    Credibility Determination . . . . . . . . . . . . . . . . . . . . 10
        2.    RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . 13

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Katheryn Meyers on May 6, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Meyers asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Meyers requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On October 1, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Meyers' Education and Employment Background

Meyers was born in 1962. She completed the ninth grade, with no further schooling or vocational training. In the past she worked as a laborer in a warehouse, and as an animal handler at an animal shelter.

3

### B. *Administrative Hearing Testimony*

#### *1. Meyers' Testimony*

At the administrative hearing, the ALJ inquired about Meyers' typical day:

> Q: And what do you do during a typical day?
> A: I run my daughter to work, and take my granddaughter to school. . . .
> And then I go home and sit down. Wait till it's time to go pick them up. . . .
> Q: And do you do laundry?
> A: No.
> Q: How does that get done?
> A: My husband. . . .
> Q: And do you do any of the cleaning? Dust, sweep, mop, vacuum, whatever?
> A: No.
> Q: And how does that get done?
> A: My husband or my daughter.
> Q: Do you do the grocery shopping, or other shopping?
> A: Sometimes.
> Q: Do you prepare the meals?
> A: No.
> Q: How does that get done?
> A: My husband.

(Administrative Record at 48-49.)

Meyers' attorney also questioned Meyers, and inquired about Meyers' functional abilities:

> Q: And do you have problems with sitting?
> A: No.
> Q: Do you have problems with standing and walking?
> A: Yes. . . .
> I have a lack of energy, and I can't walk too good.
> Q: Why can't you walk too good?
> A: Because of the club feet.
> Q: Club feet? The drop feet?
> A: Yeah, drop feet.

4

(Administrative Record at 56-57.) Meyers testified that when she goes grocery shopping, she must hold onto the shopping cart to avoid falling. She also stated that she has difficulty bending or kneeling. Additionally, Meyers indicated that she lacks energy and is lethargic due to coronary heart disease and side effects from her medications.

Meyers' attorney also questioned Meyers about her functional limitations:

> Q: How long can you stand or walk at one time?
> A: Stand maybe a couple of hours. . . .
> Q: Could you stand for six hours?
> A: No.
> Q: Now, when you're talking about standing, you're talking about standing and walking, or are you -- could you stand in one place for four hours?
> A: No.
> Q: You'd have to walk around.
> A: Yeah. Yes.
> Q: And have you tried to lift more than 10 pounds? What happens when you try to lift more than 10 pounds?
> A: I can't. Hurts my back.

(Administrative Record at 61-62.) Finally, Meyers' attorney asked Meyers whether she believed she was capable of working a full-time job. Meyers responded that she was not capable of full-time work because she lacks "energy, and can't walk. And can't lift that much."[2]

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who can:

> lift and/or carry, push and/or pull 20 pounds occasionally, 10 pounds frequently. Presume that the individual can stand and/or walk, with normal breaks, for six hours out of an eight-hour workday. Presume that the individual is limited to walking on level terrain. Presume that the individual can sit

---

[2] Administrative Record at 62.

> with normal breaks for six hours out of an eight-hour workday. Presume that the individual can stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally. The individual cannot climb ladders, ropes, or scaffolds. Cannot work at unprotected heights or around hazards. The individual cannot work in temperature extremes or high humidity. And the individual cannot work in environments with concentrated exposure to fumes, dust, gases, chemicals, and noxious odors.

(Administrative Record at 67-68.) The vocational expert testified that under such limitations, Meyers could not perform her past relevant work, but could perform the following jobs: (1) office helper, (2) cashier, and (3) laundry sorter.

### C. Meyers' Medical History

On June 5, 2012, Meyers presented at St. Luke's Hospital Emergency Room in Cedar Rapids, Iowa, with chest pain. An EKG revealed acute inferior wall myocardial infarction. She underwent emergency cardiac catheterization, which showed an occluded right coronary artery. A stent was inserted, and blood flow became normal. Moderate disease was also found in the left coronary system. Meyers was discharged from the hospital on June 7, 2012, and treated with medication, and ordered to change her diet, perform cardiac rehabilitation exercises, and stop smoking.

On November 16, 2012, Meyers met with Jody Hornickel, ARNP, for a follow-up appointment regarding her hypertension. A blood sugar panel was also taken, and found to be elevated. Hornickel diagnosed Meyers with diabetes mellitus. Finally, Hornickel noted that Meyers was unable to quit smoking, and continued to have "about two cigarettes per day."

On January 9, 2013, Dr. John May, M.D., reviewed Meyers' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Meyers. Dr. May determined Meyers could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour

workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also determined Meyers could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. May found Meyers should avoid concentrated exposure to cold, heat, humidity, fumes, odors, dusts, gases, and poor ventilation, and hazards, such as machinery and heights. Dr. May found no manipulative, visual, or communicative limitations.

Meyers had another follow-up appointment with Hornickel on May 24, 2013. In her notes, Hornickel observed that Meyers ambulated without difficulty. Hornickel found Meyers' diabetes was under control with Metformin. Finally, Hornickel noted Meyers was positive for neuropathy and nephropathy.

Less than two weeks later, on June 4, 2013, Meyers, again, met with Hornickel. Her appointment was for gynecological purposes. At this meeting, Hornickel observed Meyers' gait as being abnormal, and presumed it was secondary to neuropathy. Hornickel described Meyers' gait as "more of a toe-heel clopping[.]" Hornickel offered no diagnosis or treatment with regard to her observations of Meyers' gait.

On September 5, 2013, Meyers had a follow-up appointment for her diabetes and hypertension with Joan Schlenk, ARNP. In reviewing Meyers' history, Schlenk noted Meyers does not check her blood sugars and had a "high steppage gait and has a foot drop, but she is unclear of the reason for this. She is unable to state how long this has been going on, but says it has been over a year. She does admit to tripping at times."[3] Upon examination, Schlenk diagnosed Meyers with diabetes, hyperlipidemia, hypertension, and foot drop. Schlenk recommended Meyers continue her medications and have a "work-up" regarding her foot drop.

---

[3] Administrative Record at 489.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Meyers is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

8

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Meyers had not engaged in substantial gainful activity since July 28, 2011. At the second step, the ALJ concluded from the medical evidence that Meyers had the following severe impairments: history of myocardial infarction, coronary artery disease, obesity, and diabetes mellitus. At the third step, the ALJ found that Meyers did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Meyer's RFC as follows:

> [Meyers] has the residual functional capacity to perform a range of light work[.] . . . [She] can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours in a workday. She can only walk on level terrain. She can sit, with normal breaks, for a total of six hours in a workday. [She] can crouch, stoop, kneel, and crawl occasionally. She can climb ladders, ropes, or scaffolds

9

occasionally. She cannot work at unprotected heights or around hazards. [Meyers] cannot work in environments with concentrated exposure to dust, fumes, gases, noxious odors, or chemicals.

(Administrative Record at 24.) Also at the fourth step, the ALJ determined that Meyers is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Meyers could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Meyers was not disabled.

## B. Objections Raised By Claimant

Meyers argues the ALJ erred in two respects. First, Meyers argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Meyers argues the ALJ's RFC assessment is flawed because the ALJ failed to fully and fairly develop the medical record with regard to her neuropathy and foot drop.

### 1. Credibility Determination

Meyers argues the ALJ failed to properly evaluate her subjective allegations of disability. Meyers maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Meyers' testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the

claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968. If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Meyers' subjective allegations of disability as follows:

After careful consideration of the evidence, the Administrative Law Judge finds that [Meyers'] medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. [Meyers'] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this Decision. . . .

[S]ince there was no evidence of problems with diabetes mellitus or coronary artery disease until nearly a year later, and [Meyers'] kidney issue had been stable since 2007, [Meyers] stopped work [in July 2011] for reasons other than any of her impairments. In fact, she did state initially she was laid off (Exhibit 2E, p. 2). At the hearing, she reported she called in sick one day and lost her job. It is noted that [Meyers] obtained unemployment compensation, at least through 2012 (Exhibit 6D). An application for unemployment compensation requires a certification that an individual is able and willing to work.

[Meyers'] return to smoking and little evidence of any cardiac rehabilitation exercise program reflects poorly on her allegations that her symptoms are unbearable. She had not attempted the lifestyle changes that might help her symptoms improve. . . . Generally, individuals with disabling impairments seek medical assistance and follow medical advice in order to obtain some relief from the alleged significant symptoms. [Meyers'] failure to do so is one indication, among others, which suggests she is not motivated fully to return to substantial gainful activity and/or is not representing accurately her level of functioning. The failure to follow medical advice is more consistent with a tolerable and nondisabling degree of symptoms.

[Meyers] alleges a decline in her capacity to attend to household chores and pet care, but such decline does not correlate with a similar decline in her medical condition. While the objective medical evidence shows new diagnoses of diabetes mellitus with neuropathy, as well as a gynecological

> complication requiring a hysterectomy, there is no evidence that [Meyers] acquired new functional limitations that prevented her from working to the degree she alleges. There is no medical evidence of her alleged foot drop and falls. [Meyers] appeared to have no problems writing, standing, and entering and leaving the hearing room.

(Administrative Record at 25-27).

In her decision, the ALJ thoroughly considered and discussed Meyers' treatment history, the objective medical evidence, her functional restrictions, activities of daily living, use of medications and treatment, and work history in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Meyers' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Meyers' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. RFC Assessment

Meyers argues the ALJ's RFC assessment is flawed. Meyers maintains that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Meyers asserts the ALJ failed to fully develop the record in making her RFC assessment for

13

Meyers. Meyers contends that the ALJ should have ordered a consultative examination to address her problems with neuropathy and foot drop. Meyers concludes this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Lastly, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Meyers asserts the ALJ failed to fully develop the medical record by not ordering a consultative examination to evaluate her allegations of neuropathy and foot drop. In her decision, the ALJ addressed her reasoning for not addressing Meyers' neuropathy and foot drop:

> While the objective medical evidence shows new diagnoses of diabetes mellitus with neuropathy . . . there is no evidence that [Meyers] acquired new functional limitations that prevented her from working to the degree she alleges.

(Administrative Record at 27.) The ALJ further noted that "[t]here is no medical evidence of her alleged foot drop and falls."[4] Additionally, the ALJ noted Meyers:

> alleged that she had a foot drop, and she had fallen several times. Despite this, [Meyers] admits the ability to perform personal care tasks independently, such as bathing, dressing, personal hygiene, feeding, and toileting.

(Administrative Record at 25.) In reviewing the entire record, the Court finds that the ALJ sufficiently addressed Meyers' minimal history of neuropathy and foot drop. The medical

---

[4] Administrative Record at 27.

15

evidence in the record includes references from two nurse practitioners who noted issues with Meyers' gait. The nurse practitioners suggested the issues with Meyers' gait was due to neuropathy and foot drop. Neither nurse practitioner opined that it caused Meyers any limitations, nor attempted to treat the neuropathy or foot drop. No other medical source, treating or examining, addressed Meyers' neuropathy or foot drop. Moreover, in assessing Meyers' RFC, the ALJ thoroughly addressed and considered Meyers' entire medical history and treatment for her complaints.[5] Accordingly, the Court finds that the medical evidence relied on by the ALJ was adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Therefore, the Court determines remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

In summary, when assessing Meyers' RFC, the ALJ thoroughly addressed and considered Meyers' entire medical history and treatment for her complaints.[6] The ALJ also properly considered and thoroughly discussed Meyers' subjective allegations of disability in making her overall disability determination, including determining Meyers' RFC.[7] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Meyers' medical records, observations of treating and non-treating physicians, and Meyers' own description of her limitations in making the ALJ's RFC

---

[5] *See* Administrative Record at 25-28 (providing a thorough discussion of Meyers' overall medical history and treatment).

[6] *See* Administrative Record at 25-28 (providing a thorough discussion of Meyers' overall medical history and treatment).

[7] *Id.* (providing a thorough discussion of Meyers' subjective allegations of disability).

16

assessment for Meyers.[8] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Meyers' assertion that the ALJ's RFC assessment is flawed is without merit.

## V. CONCLUSION

The Court finds that the ALJ properly determined Meyers' credibility with regard to her subjective allegations of disability. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 6th day of January, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[8] *Id.* (providing thorough discussion of the relevant evidence for making a proper RFC determination).

17